STATE of Wisconsin, Plaintiff-Respondent,

RACINE COUNTY, Plaintiff-Respondent-Cross Appellant,

v.

Janice BERNDT, Defendant-Appellant-Cross Respondent.

Court of Appeals

*No. 90-0948. Submitted on briefs January 31, 1991.—Decided February 27, 1991.*

(Also reported in 467 N.W.2d 205.)

On behalf of defendant-appellant-cross respondent, the cause was submitted on the briefs of *Martin I. Hanson* and *Thomas M. Carroll* of *Hanson, Gasiorkiewicz & Weber, S.C.* of Racine.

On behalf of plaintiff-respondent and plaintiff-respondent-cross appellant, the cause was submitted on the briefs of *LeRoy Kramer, III,* deputy corporation counsel.

Before Brown, Scott and Anderson, JJ.

ANDERSON, J. Janice Berndt and Racine county appeal portions of a judgment assessing reimbursement from Berndt to Racine county for expenses incurred for the maintenance of thirty-four horses. Berndt's horses were seized and maintained pursuant to sec. 951.15, Stats. Because this court finds the reimbursement amounts proper under sec. 951.17, Stats., the judgment is affirmed.[1]

In May 1989, Racine county sheriff deputies seized thirty-four horses owned by Berndt. The horses were transported to the Racine county fairgrounds and the sheriff's department undertook the task of maintaining the horses. This became known as the "horse project." The county maintained the horses from May 1989 until a judgment sale in January 1990. In July 1989, the horses were transferred to Cherrywood Farms to make room for the Racine county fair. The relevant time period for this appeal is from May 1989 to November 1989.

Berndt was found guilty of three counts of civil forfeiture for cruelty to animals contrary to secs. 951.13, 951.14 and 951.18(1), Stats. Pursuant to sec. 951.17, Stats., Racine county sought reimbursement for expenses related to the maintenance of the horses.[2] The county sought reimbursement for expenses for feed, rent, miscellaneous, salary and benefits of all deputies who

---

[1]The chapter addressing crimes against animals was codified in Wisconsin Statutes chapter 948 at the time this action began. Effective July 1, 1989, it was recodified in chapter 951 without major modification. Section 54 and sec. 66a, 1987 Wis. Act 332. This opinion will cite to the current chapter.

[2]In addition to a motion for reimbursement, the county brought motions for the sale of the horses to satisfy a lien under sec. 951.15(2), Stats., and for an injunction under sec. 951.18(3), Stats. The parties do not appeal the trial court's decision on those motions.

worked on the horse project, and the amount of money donated by private individuals. The total amount the county sought was $70,027.95.

The trial court granted the following amounts for reimbursement: $3,603.75 for feed; $6,500.00 for rent paid to Cherrywood Farms; $17,984.39 for the salary and benefits of one full-time deputy; $4,221.05 for minimum wage hourly pay for other deputies; and $8,357.12 for miscellaneous expenses. The trial court applied the private donations of $6,915.64 to the miscellaneous expenses, leaving a balance of $1,441.48. The trial court denied the following amounts for reimbursement: money donated by private individuals; the full salary, overtime and benefits for more than one deputy; and rent expenses attributable to the county fairgrounds. The total reimbursement was $33,750.67.

The trial court found that the deputies spent 1,952 hours on the horse project. The trial court concluded that only the time of one full-time deputy working on the horse project was reasonable, and that it was unreasonable to have deputies doing manual labor on the horse project. The trial court found that the majority of labor performed by the deputies could have been performed by unskilled labor if volunteers were not available. The hours not attributable to the one full-time deputy were reimbursed at $3.35 an hour.

The trial court found that there was no evidence to establish that the rental expenses for the county fairgrounds were actually incurred or paid by the sheriff's department. Furthermore, the trial court found that the organizations primarily responsible for raising $6,915.64 were conduits for private individuals to donate money. The trial court found that the money was donated as gifts by private individuals. In denying reimbursement for the amount of money donated, the trial court rea-

soned that the donations used for miscellaneous expenses lessened the actual expenses incurred by the county.

On appeal, Berndt argues that the county did not present sufficient evidence to establish the reasonableness of any salary and benefit expenses attributable to any deputy. Berndt reasons that because the horse project duties of the deputy were completely unrelated to deputy work, all such expenses were unreasonable because outside help should have been retained at a lower hourly rate. In the alternative, Berndt argues that because the number of hours spent on the horse project by the deputies was reasonable, all the hours should be reimbursed at $3.35 an hour.

The county cross-appeals and argues that because sec. 951.15, Stats., does not require that the maintenance of the horses be turned over to non-law enforcement personnel, the full salary, benefits and overtime for all deputies should be reimbursed. Furthermore, the county argues that the reimbursement should include the expenses funded by private individuals. The county claims that the lien described in sec. 951.15(2) allows reimbursement for all expenses regardless of the source of funding.

■

The first issue is whether sec. 951.17, Stats., provides for reimbursement of reasonable expenses or reimbursement of all expenses.[3] Interpretation of a statute is a question of law which appellate courts may review

---

[3]Section 951.17(2), Stats., provides in relevant part:

(2) Expenses covered under this section include:

(a) Investigative expenses of any search under s. 951.16 or any seizure under this chapter.

(b) Any fees of a doctor of veterinary medicine.

(c) Expenses of taking any animal into custody under this

without deference to the trial court. *State v. Wittrock,* 119 Wis. 2d 664, 669, 350 N.W.2d 647, 650 (1984). If a statute is ambiguous, we look to its statutory content, subject matter, scope, history, and the object to be accomplished in order to arrive at its reasonable meaning. *Boltz v. Boltz,* 133 Wis. 2d 278, 284, 395 N.W.2d 605, 607 (Ct. App. 1986). A statute is ambiguous if reasonable persons could disagree as to its meaning. *Id.* We determine that sec. 951.17 is ambiguous because "reasonableness" does not appear in each subdivision of the section. Therefore, reasonable people could disagree whether reimbursement should be for reasonable expenses or for all expenses.

■ This court concludes that sec. 951.17, Stats., requires the trial court to assess reasonable expenses for maintaining animals seized pursuant to ch. 951, Stats. An earlier version of sec. 951.17 and a subsequent amendment support this reading of the statute. At its creation, the section was contained in one paragraph. The relevant part of the section then reads: "the expenses of keeping or disposing of any animal taken into custody pursuant to such search and *all other expenses reasonably* incident to such search shall be assessed against the person alleged to have violated this chapter . . .." Section 6, ch. 314, Laws of 1973 (emphasis added). A subsequent amendment reorganized the section into subsections and subdivisions. Section 4, 1983 Wis. Act 95.

This court does not believe that the legislature intended to remove "reasonableness" from some parts of

chapter, including expenses reasonably incident to taking the animal into custody.

 (d) Expenses of keeping or disposing of any animal taken into custody.

the section when it amended it into subsections and subdivisions. If the legislature intended to remove reasonableness from the section, it could have placed "any" or "all" before "expenses." *See, e.g.,* sec. 951.17(2)(c) and (d), Stats. For example, the legislature added the word "any" to the veterinarian's fee reimbursement expense. *Compare* sec. 6, ch. 314, Laws of 1973 *with* sec. 4, 1983 Wis. Act 95.

In interpreting a statute, the spirit or intention of a statute should govern over the literal or technical meaning of the language used. *City of Madison v. Town of Fitchburg,* 112 Wis. 2d 224, 236, 332 N.W.2d 782, 787 (1983). The court may insert words necessary or reasonably inferable to avoid an absurd result. *State v. Gould,* 56 Wis. 2d 808, 812, 202 N.W.2d 903, 905–06 (1973). Our reading prevents the absurd result that would allow the county to receive reimbursement for all expenses regardless of the reasonableness of the expenses. If a reasonableness requirement was not read into the entire section, nothing would prevent the county from incurring unnecessary and avoidable costs for the maintenance of the horses. A reasonableness standard is necessary to justify the use of expensive and highly trained personnel to do unskilled labor. Any other interpretation of sec. 951.17, Stats., would allow the county to accrue an extraordinary bill and would lead to absurd results.

The second issue is whether the deputies' salary and benefits were reasonable.[4] On review of a factual determination made by a trial court without a jury, this court will not reverse unless the finding is clearly erroneous.

---

[4]The parties do not challenge the trial court's assessment of the feed, rent and miscellaneous expenses.

*Noll v. Dimiceli's, Inc.,* 115 Wis. 2d 641, 643, 340 N.W.2d 575, 577 (Ct. App. 1983).

█

Neither party argues that the 1,952 hours spent by the deputies were unreasonable. Of these hours, the time of one full-time deputy between May 1989 and the hearing was spent overseeing the horse project. The duties included coordinating the care and maintenance of the horses. The deputy did the following tasks: coordinated volunteers; arranged for veterinarian visits; arranged for farrier services; and ordered, purchased and coordinated delivery of supplies. The labor did not include feeding and cleaning the horses. The trial court found that coordinating the care of thirty-four horses was a full-time job and equated these activities with running a small business.

These findings are not clearly erroneous. The full salary and benefits of the coordinating deputy were reasonable. The county has the discretion to maintain the horses or turn them over to another party.[5] The discretion built into the statute contemplates an officer overseeing the maintenance of the animals. It is reasonable to appoint one deputy to oversee the project and assure that the county is not guilty of ch. 951, Stats., violations. It does not follow, however, that if the county chooses to care for the horses that its employees must do manual labor beyond overseeing the project.

█

The trial court found that 1,183 hours were spent by deputies other than the coordinating deputy. Based on

---

[5]Section 951.15(2), Stats., provides that:

[a]ny law enforcement officer may . . . shelter and care for any animal found to be . . . treated in a cruel manner and may deliver such animal to another person to be sheltered, cared for and given medical attention, if necessary.

the exhibits offered into evidence, the trial court found that the duties of the deputies included feeding, watering, shoveling manure, and cleaning and maintaining the premises. The county argued that the deputies were necessary for security reasons. The trial court found that the exhibits did not offer sufficient evidence to substantiate the relationship between the need for security and the number of hours spent by deputies doing manual labor.

These findings are not clearly erroneous. This court agrees with the trial court that even though the work was necessary and the amount of time was reasonable, it was unreasonable to assign highly paid and trained deputies to do work that did not involve coordinating the project or providing security. Volunteers and prisoners were utilized for much of the manual work. However, the manual work not done by volunteers and prisoners could have been performed by unskilled labor. Berndt argues that based on this rationale, no money should be reimbursed for any of the deputies. However, the work had to be done and the county would have had to incur the expense in assuring the work was completed. The time and necessity of the work is clear. The use of expensive and highly trained personnel to do the work is not clear. Thus, a rate of $3.35 an hour is a reasonable standard to set for reimbursement for the time of the non-coordination deputies and is supported by the record.

■

The third issue is whether the county should be reimbursed for expenses funded by private individuals. Section 951.15, Stats., provides that the county has a lien for the care, keeping and medical attention of the horses. A lien presupposes a debt. *See Boorman v. Wisconsin Rotary Engine Co.*, 36 Wis. 207, 211-12 (1874). However, the trial court found that the donations made

by private individuals were gifts. This finding is not clearly erroneous. Nothing in the record before us suggests that the individuals did not intend to relinquish interest in the money. *See In re Potts,* 127 Wis. 2d 47, 51, 377 N.W.2d 204, 206 (Ct. App. 1985). Thus, because the gifts did not create a debt, a lien for the money donated by private individuals cannot exist. Because the county's motion is limited to seeking satisfaction of the lien, the trial court's denial of reimbursement of expenses paid by private individuals was proper.

*By the Court.*—Judgment affirmed.