STATE of Wisconsin, Plaintiff-Appellant-Petitioner,

v.

Jeffrey A. OLSON, Defendant-Respondent.

Supreme Court

*No. 91-2306. Oral argument January 7, 1993.—Decided May 5, 1993.*

(Also reported in 498 N.W.2d 661.)

For the plaintiff-appellant-petitioner the cause was argued by *Jerome S. Schmidt,* assistant attorney general, with whom on the briefs was *Anthony J. Pozorski,* assistant district attorney and *James E. Doyle,* attorney general.

For the defendant-respondent there was a brief by *Craig R. Day* and *Hoskins, Brown, Kalnins, McNamera & VanDeHey,* Lancaster and oral argument by *Mr. Day.*

HEFFERNAN, CHIEF JUSTICE. This is a review of an unpublished decision of the court of appeals affirming a judgment of the circuit court for Grant County, John R. Wagner, Judge, that found Jeffrey Olson not guilty of operating a motor vehicle after revocation-first offense ("OAR-first offense") in violation of sec. 343.44(1), Stats,[1] on the ground that the state did not offer evidence of the third element of *prima facia*

---

[1] Section 343.44(1), Stats., states in part:

OAR, namely that Olson knew or had cause to believe that his license had been revoked. To the contrary, the state argues that the element of scienter no longer applies to OAR prosecutions because the legislature's decriminalization of sec. 343.44, Stats., implicitly overruled *State v. Collova,* 79 Wis. 2d 473, 255 N.W.2d 581 (1977), in which this court required scienter for OAR prosecutions.

The circuit court denied the state's motion for a special jury instruction omitting scienter as a required element of sec. 343.44(1), Stats. In denying the motion, Judge Wagner concluded that the holding in *Collova* continued in effect absent express legislative action to the contrary. On appeal, Judge Sundby (sitting alone) expressed concern with the result of Judge Wagner's decision but nonetheless concurred in the court's reasoning. We too agree with the reasoning and the decision of the circuit court and therefore affirm the decision of the court of appeals.

On July 8, 1991, Jeffrey Olson was cited for OAR-first offense, a civil offense under sec. 343.44(2), Stats. The charge resulted from a June 20, 1991, traffic stop in which the police officer who stopped Olson to check his vehicle's registration later discovered that Olson's license had been revoked because he had committed two six point driving violations in less than a year.[2] Before trial, the state filed a motion *in limine* requesting an

---

[2] Section 343.32 provides in relevant part:

amended special jury instruction with respect to the elements required to prove a violation of sec. 343.44(1). In particular, the state sought to avoid having to prove Olson's knowledge of his revocation because the element of scienter, though required in *Collova*, was no longer appropriate after 1982 when OAR-first offense was reduced from a criminal to a civil offense. The standard jury instructions for OAR-first offense had, however, remained unchanged. The state maintained that knowledge should not be construed as an element of the revised OAR statute because the standard for proving criminal OAR should not be applied to a civil forfeiture.

The circuit court denied the state's motion and a jury trial was held on August 26, 1991. After producing uncontroverted evidence that Olson (1) had driven a motor vehicle on a Wisconsin highway on June 20, 1991, and (2) that his driver's license was revoked at the time, the state moved the court for a directed verdict. The court denied the motion because the state had not met its burden of proving Olson's knowledge of his revoca-

---

(2)(b) The scale adopted by the secretary shall assign, for each conviction . . . 4 demerit points for exceeding the lawful speed limit by more than 10 but less than 20 miles per hour . . ..

(c) In order for the secretary to suspend or revoke an operating privilege under this subsection, the operator must have accumulated 12 demerit points in any 12-month period.

Wis. Stats., § 343.32(2)(b) and (c) (1991–92).

In this case, Olson's violations occurred three hundred and fifty-seven days apart: the first on February 17, 1990, and the second on February 9, 1991. Normally four point violations, Olson's two speeding violations each carried six points because he was driving with a probationary license and had a prior driving conviction dating back to 1987. While the February 17th citation was silent as to the number of points assessed, the February 9th citation estimated that Olson would be assessed only four points for the violation.

tion as required under jury instruction—Wis. J.I.—Criminal 2620A.[3] Although the state produced evidence that the notice of revocation had been mailed to Olson's permanent home address on April 24th, 1991, both Olson and his mother testified that he never received the notice. The court overruled the state's objection to the use of the standard jury instruction and proceeded to read to the jury several instructions, including Wis. J.I.—Criminal 2620A and Wis. J.I.—Criminal 2620B (1982) which was modified only to the extent of substituting the civil burden of proof.[4] Following deliberations, the jury returned a verdict of not guilty and the state moved unsuccessfully for a judgment notwithstanding the verdict.

---

[3] Wis. J.I.—Criminal 2620A requires the following elements for OAR-first offense:

(1) the defendant operated a motor vehicle on a highway of this state;

(2) the defendant operated a motor vehicle at a time when his operating privilege was duly revoked; and

(3) the defendant knew or had cause to believe that his operating privilege had been revoked.

Wis. J.I.—Criminal 2620 requires the same elements for subsequent OAR prosecutions. The two instructions differ only as to the burden of proof required before the court may convict.

[4] Wis. J.I.—Criminal 2620B applies to cases in which notice of revocation is sent by mail to the defendant. The instruction provides that the defendant has reason to believe his driving privileges have been revoked if written notice is received, or is presumed to have been received if a properly addressed and postaged notice is introduced as evidence.

In modifying the instruction for the instant case, Judge Wagner substituted the civil burden proof ("clear, satisfactory and convincing evidence") for the standard criminal burden of proof ("beyond a reasonable doubt").

The circuit court denied the state's motions on the basis of *State v. Collova* which required the state to prove the defendant's knowledge of revocation in OAR criminal prosecution. Although the OAR-first offense statute applied in *Collova* was decriminalized in 1982, Judge Wagner held that *Collova* had not been overruled and therefore controlled the outcome of the instant case. On appeal, Judge Sundby agreed with the circuit court's reasoning. While conceding the state's argument that the element of scienter might not be a necessary element of the revised civil OAR statute, Judge Sundby concluded that the legislature did not intend to change the required elements of OAR because it failed explicitly to supersede the *Collova* decision when it revised the OAR statute and in fact made no change whatsoever in the statute beyond revising the penalty.

The question before this court is whether the legislature intended sec. 343.44, Stats., as amended, to be a statute of strict liability. Statutory construction is a question of law that this court determines *de novo. State v. Moore,* 167 Wis. 2d 491, 495-96, 481 N.W.2d 633 (1992); *State v. Berndt,* 161 Wis. 2d 116, 121-22, 467 N.W.2d 205 (Ct. App. 1991). The principle objective of statutory construction is to ascertain and give effect to the intent of the legislature. *Green Bay Redevelopment Authority v. Bee Frank, Inc.,* 120 Wis. 2d 402, 409, 355 N.W.2d 240 (1984) (*citing Ball v. District No. 4, Area Board,* 117 Wis. 2d 529, 537-38, 345 N.W.2d 389 (1984)). In the instant case, construing sec. 343.44(1), requires this court to determine the sweep of the legislative intent in decriminalizing OAR-first offense in light of this court's *Collova* decision mandated four years earlier when OAR-first offense carried criminal penalties and we held scienter was required.

The state asserts that the legislative history, the statutory language and the prior case law surrounding sec. 343.44, Stats., all indicate a legislative intent to overturn the *Collova* decision requiring scienter when it decriminalized first offense OAR. While we disagree with the state's analysis of all three of these factors, we are particularly troubled by the state's misunderstanding of the rationale of *State v. Collova*. We therefore begin our discussion with an exposition of prior case law.

*State v. Collova* involved a defendant charged with OAR because he failed to maintain a current certificate of insurance with the Division of Motor Vehicles as required because of a prior revocation. Although the OAR statute was silent with regard to whether scienter was a necessary element of the crime, this court stated that in such situations it is the obligation of the court to determine the legislative intent from the nature of the particular statute involved. *Collova*, 79 Wis. 2d at 480.[5] The court concluded that the nature of the OAR statute required that the state prove the element of scienter.

In reaching this conclusion, the *Collova* court distinguished between criminal statutes that are designed to penalize moral culpability and regulatory statutes that are designed to prevent widespread social injury. *Collova*, 79 Wis. 2d at 482.[6] While the former involve personal

---

[5] *See also State v. Stoehr*, 134 Wis. 2d 66, 76, 396 N.W.2d 177 (1986); *State v. O'Neil*, 141 Wis. 2d 535, 538-39, 416 N.W.2d 77 (Ct. App. 1987); *State v. Hermann*, 164 Wis. 2d 269, 276-77, 474 N.W.2d 906 (Ct. App. 1991). *See generally,* LaFave and Scott, *Substantive Criminal Law* § 3.8 at 342-45 (1986).

[6] The *Collova* court relied in large measure on *Morissette v. United States*, 342 U.S. 246 (1952), in which the United States Supreme Court, after discussing scienter and the evolution of regulatory criminal statutes, concluded that it would not strip the element of scienter from 18 U.S.C. § 641, which prohibits the

stigmatization and therefore require a concomitant degree of judicial caution, the latter demand simple trials for efficient administration of regulations. As further evidence of the division between these classes of crimes, the *Collova* court reasoned that with most strict liability statutes:

> [t]he persons to whom the regulations are directed are generally in a position to exercise such high degree of care; they will be encouraged to do so by the imposition of strict penal liability, and the penalties usually involved are such as to make the occasional punishment of one who has done everything that could have been done to avoid the violation a reasonable price to pay for the public benefit of the high standard of care that has been induced.

*Collova,* 79 Wis. 2d at 485. Examples of common "regulatory criminal statutes" include: failure to have a license, failure to comply with regulations when trafficking in drugs or in firearms, food and drug regulations, traffic law violations, and consumer fraud protections. *Collova,* 79 Wis. 2d at 484–85.

After identifying the defining indicia distinguishing punitive and regulatory criminal statutes, the *Collova* court went on to characterize the OAR statute as punitive in nature. In so holding, the court acknowledged that certain factors prove more or less dispositive depending on the nature of the particular statute. For example, the court might consider the regulatory nature of the statute, the degree of care that can be exercised by the defendant, or the severity of penalty attached to a violation. In the case of OAR, the court focused prima-

embezzlement, conversion or unauthorized sale of federal property, absent express legislative directive. *Morissette,* 342 U.S. at 263.

rily on the severity of punishment attached to a violation of sec. 343.44(1), particularly on the mandatory jail sentence that accompanied a conviction. *Collova*, 79 Wis. 2d at 485.

The state maintains that the holding in *State v. Collova* was predicated on the fact that initial violations of sec. 343.44(1) carried criminal penalties—mandatory jail sentences ranging from ten days to one year, and mandatory fines ranging from $100 to $400. The state quotes at length from the *Collova* opinion, focusing on the sections that highlight this court's concern with the severity of penalty:

> We think the severe consequences attached to a violation of sec. 343.44, Stats., to be the dispositive factor here. An offense under the statute is a misdemeanor and, in terms of the severity of its penalties, a serious one.
>
> . . .
>
> To inflict substantial punishment on a person who is innocent of any intentional or negligent wrongdoing offends the sense of justice and is ineffective.
>
> . . .
>
> We believe that the legislature intended in sec. 343.44 to impose on drivers not strict criminal liability, but a high objective standard of care. We believe the legislature intended to include as an element of the offense under sec. 343.44 that the defendant has cause to believe that his driver's license might be revoked or suspended. . . .

*Collova*, 79 Wis. 2d at 485-87 (citations and footnotes omitted). In light of the references to the criminal penalties attached to sec. 343.44(1), the state concludes that this court was concerned solely with the nature and

extent of the penalty in reaching its determination. Consequently, the state further concludes that by decriminalizing the penalty attached to OAR-first offense the legislature implicitly intended to overturn our holding in *Collova*.

We disagree with this narrow interpretation of *Collova*'s holding. It is true, as stated supra, that in *Collova* this court scrutinized the severity of penalty under sec. 343.44, Stats. The penalty, however, was merely a single criterion for determining whether the statute was regulatory or punitive in nature. The court noted that:

> [t]he inquiry, reduced to its simplest terms, may be stated to be whether the statute appears on balance to be designed to punish wrongdoers or to implement a high standard of care on the part of the public. . . . [w]e think it clear in light of the severity of the penalty involved, that the statute is in large measure designed to punish those who have culpably done that which the legislature has declared to be wrongful.

*Collova*, 79 Wis. 2d at 486. Explicit in the reasoning of the *Collova* court was a concern over the basic unfairness of imposing so harsh a punishment on defendants who were not aware that they were operating a vehicle without a valid license. We stated that "[t]o inflict substantial punishment on a person who is innocent of any intentional or negligent wrongdoing offends the sense of justice and is ineffective." *Id.*

The *Collova* court's broad fairness concerns find their roots in the constitutional protections that delineate the scope and nature of criminal proceedings. The United States constitution speaks in terms of criminal

637

and civil violations.[7] Many of the protections surrounding criminal proceedings are designed to ensure that a defendant receives adequate notice of what constitutes criminal conduct, e.g. the provision in respect to *ex post facto* laws. Due process requirements guarantee that a defendant is aware of the nature and extent of the state's case and is thus prepared to defend against all possible charges. The basis for such provisions is in part to ensure that the violations to which the more severe penalties are attached receive heightened protections so that the defendant's constitutional rights are not violated.[8]

The *Collova* court used the penalty associated with OAR-first offense as a gauge of the legislature's intentions in enacting sec. 343.44, Stats. Specifically, the

[7] For example, in the criminal arena the fifth amendment protects against self-incrimination and ensures that "[n]o person shall be held to answer for a capital, or otherwise infamous crime, unless on a presentment or indictment of a Grand Jury . . .." The sixth amendment further guarantees that all criminal defendants "shall enjoy the right to a speedy and public trial, by an impartial jury . . . and to be informed of the nature and cause of the accusation; to be confronted with the witnesses against him; to have compulsory process for obtaining witnesses in his favor, and to have the Assistance of Counsel for his defence." As for civil offenses, the seventh amendment guarantees trial by jury for suits where the value exceeds twenty dollars.

[8] For a general discussion on the genesis and growth of the civil / criminal penalty structure see Perkins, *The Civil Offense,* 100 U. Pa. L. Rev. 832 (1952); Clark, *Civil and Criminal Penalties and Forfeitures: A Framework for Constitutional Analysis,* 60 Minn. L. Rev. 379, 403–10 (1976); Cheh, *Constitutional Limits on Using Civil Remedies to Achieve Criminal Law Objectives: Understanding and Transcending the Criminal-Civil Law Distinction,* 42 Hastings L.J. 1325 (1991); Mann, *Punitive Civil Sanctions: The Middleground Between Criminal and Civil Law,* 101 Yale L.J. 1795, 1816–20 (1992).

court noted a number of penalty features that it considered excessively harsh for a statute of strict liability including, the mandatory jail sentence which precluded courts from granting probation instead of incarceration, the length of incarceration mandated, the fine that could be added at the court's discretion, and the revocation of driving privileges for a period of one year. *Collova,* 79 Wis. 2d at 485–86.

*State v. Stoehr* is another example of a case in which this court was confronted with a statute that was silent with respect to scienter. The issue in *Stoehr* was whether sec. 946.13(1)(b), Stats., which prohibited a public officer from having a private interest in a public contract, was a strict liability statute. The *Stoehr* court relied on *Collova* for the following factors to be considered when determining whether a statute requires scienter: the language of the statute, the legislative history of the statute, the seriousness of the penalty, the purpose of the statute and the practical requirements of effective law enforcement. *State v. Stoehr,* 134 Wis. 2d at 76 (*citing Collova,* 79 Wis. 2d at 478–480, 482, 485; *State v. Stanfield,* 105 Wis. 2d 553, 560–61, 314 N.W.2d 339 (1982), overruled on other grounds, *State v. Poellinger,* 153 Wis. 2d 493, 451 N.W.2d 752 (1990)). After considering all four criteria, the *Stoehr* court concluded that sec. 946.13(1), Stats., was a statute of strict liability. *Stoehr,* 134 Wis. 2d at 71.

We find it significant that the *Stoehr* court reached this conclusion despite the relatively harsh statutory penalties attached to a violation of sec. 946.13(1)(b), namely a fine not to exceed $10,000 or imprisonment not to exceed two years or both. *Stoehr,* 134 Wis. 2d at 70. In so holding, the court acknowledged the severity of the penalties involved but reasoned that the statute's legislative history, statutory language and purpose, and public

policies warranted strict liability. Distinguishing its holding from that in *Collova*, the court stated that "*Collova* illustrates the court considers the severity of the penalty as one indicia of legislative intent to require scienter, but not the sole indicia." *Id.* at 81. The court then continued: while "the availability of imprisonment as a penalty for the violation of a statute may point toward legislative intent that scienter is an element of the crime . . . the penalty does not resolve the issue." *Id.* at 81. Indeed, the *Stoehr* court noted that "no single factor is controlling" and stressed the need to consider all of the factors that influence the legislature's intention with respect to requiring scienter. *Id.* at 82.

*Stoehr* and *Collova* clearly indicate that this court considers a variety of factors in determining legislative intent when confronted with legislative silence with respect to the element of scienter. In *Collova*, the court focused on the criminal sanctions that accompanied a violation of OAR-first offense. In *Stoehr*, the court focused on more subjective criteria such as statutory language and purpose. While the focus of each case may be different, both illustrate this court's concern with the broader question of whether punishment may fairly be imposed on defendants who are unaware that their actions are not in compliance with the law. In light of the language employed by these cases and our holdings therein, we are not persuaded by the state's argument that our decision in *Collova* to extend the requirement of scienter to OAR-first offense was predicated solely on the existence of criminal sanctions. We disagree with the state that the holding of *Collova* is inapplicable as a matter of law to OAR-first offense civil actions.

The state nevertheless contends that *Collova*'s holding is irrelevant to the instant dispute because the legislature implicitly overruled the decision by decriminaliz-

ing the penalties attached to OAR-first offense. A review of the legislative history surrounding sec. 343.44, Stats., however, suggests that the legislature did not intend to affect the substantive provisions or the required elements of the OAR statute when it diminished the penalties attached to OAR violations.

When determining legislative intent, this court must assume that the legislature knew the law in effect at the time of its actions. *State v. Hungerford*, 84 Wis. 2d 236, 251, 267 N.W.2d 258 (1978). Moreover, we presume that the legislature is aware that absent some kind of response this court's interpretation of the statute remains in effect. *In re Interest of Z.J.H.*, 162 Wis. 2d 1002, 1023, 471 N.W.2d 202 (1991) (*quoting Zimmerman v. Wisconsin Elec. Power Co.*, 38 Wis. 2d 626, 633–34, 157 N.W.2d 648 (1968)). Legislative silence with regard to new court-made decisions indicates legislative acquiescence in those decisions. *In Interest of R.W.S.*, 162 Wis. 2d 862, 880, 471 N.W.2d 16 (1991); *State v. Eichman*, 155 Wis. 2d 552, 566, 455 N.W.2d 143 (1990).

From 1957 when the statute was renumbered to appear in its present place in the statutes, to 1981, when the statute was decriminalized, the legislature amended the penalty provisions of sec. 343.44, Stats., no fewer than six times.[9] Three of these amendments occurred after this court's decision in *Collova*. We find these

---

[9] Over the years the penalty provisions attached to OAR-first offense have changed frequently:

| | |
|---|---|
| 1957: | $50 to $200 fine or imprisoned up to 6 months or both. |
| 1967: | $50 to $200 fine and imprisoned 5 days to 6 months. |
| 1971: | $100 to $400 fine and imprisoned 10 days to 1 year. |
| 1977: | $100 to $400 fine and imprisoned 10 days to 6 months. |
| 1979: | $100 to $400 fine and imprisoned 5 days to 6 months. |

repeated revisions of sec. 343.44 significant in that the legislature's repeated amendment of the statute without expressly overturning *Collova* suggests legislative acquiescence with the holding of the decision. The legislature's failure to insert the word "knowingly" in the statute further confirms our conclusion that the holding in *Collova* had become accepted law by the time these amendments were enacted.

Moreover, within months of this court's decision in *Collova* the legislature amended the penalty structure of sec. 343.44, Stats. It reduced the criminal fine attached to a violation of sec. 343.44(1) but took no action to decriminalize the offense. Assuming as we must that the legislature was aware of the *Collova* decision when it adopted the 1977 amendments then the legislature's failure to decriminalize the statute in 1977 indicated a desire to retain the element of scienter. This argument is particularly persuasive if the state is correct in its assertion that the *Collova* decision was predicated on the criminal / civil dichotomy.

We are further persuaded that the legislature acquiesced in the *Collova* decision because the jury instructions that apply to sec. 343.44, Stats., continue to require the element of scienter in civil OAR prosecutions.[10] Shortly after the legislature decriminalized OAR-first

1981: $150 to $600 forfeiture except for certain specified crime-based revocations which carry mandatory imprisonment.

[10] We have clearly stated in the past that while jury instructions are not precedential, they are of persuasive authority. *See, e.g., State v. O'Neil,* 141 Wis. 2d at 541 n.1 (*citing State v. Beets,* 124 Wis. 2d 372, 383 n.7, 369 N.W.2d 382, 387 n.7 (1985)). We take this opportunity to remind the state that it has itself urged Wisconsin courts on other occasions to consider the persuasive effect of jury instructions requiring scienter despite legislative silence. *See State v. Hartnek,* 146 Wis. 2d 188, 195, 430 N.W.2d 361 (Ct. App. 1988).

642

offense in 1982 the jury instructions were rewritten to account for the differences between the revised civil and criminal penalty sections; Wis. J.I.—Criminal 2620A applies only to first offenses and Wis. J.I.—Criminal 2620 applies to all subsequent OAR offenses. In creating the separate jury instructions the Criminal Jury Instruction's committee expressly noted the impact of *Collova* on OAR prosecutions and the need to account for the recent decriminalization of OAR-first offense in light of that decision. In drafting the new instructions, however, the only change made by the committee was the incorporation of the civil burden of proof in Wis. J.I.—Criminal 2620A. The elements required for OAR remain the same in both the civil and criminal instructions.

■

We are not persuaded by the state's interpretation of the legislative history surrounding sec. 343.44, Stats. The state urges an interpretation of civil OAR that belies the reality of the legislative actions taken in regard to the statute. It is true that the legislature eventually decriminalized OAR-first offense, but only four years after the decision in *Collova* was mandated and only after the criminal penalties had twice been amended without any reference to the element of scienter. We therefore reject the state's position that the legislature, in decriminalizing OAR-first offense, overruled *sub silentio* this court's holding in *Collova.*

Statutory drafting is not always the model of clarity and the courts accordingly must play an important role in clarifying sometimes less than pellucid statutory language. Nevertheless, we take this opportunity to point out that with statutory construction, as with the common-law:

> The purpose and obvious effect of doing away with the requirement of a guilty intent is to ease the prosecution's path to conviction, to strip the defendant of such benefit as he derived at common law from innocence of evil purpose, and to circumscribe the freedom heretofore allowed juries. Such a manifest impairment of the immunities of the individual should not be extended to common-law crimes on judicial initiative.

*Morissette,* 342 U.S. at 263. Nor should it be extended by the judiciary to statutory offenses. If the Wisconsin legislature intends in the future that civil OAR be enforced as a statute of strict liability then it must make these intentions known clearly and unequivocably. In keeping with past decisions of this court, we conclude that decriminalizing penalties alone is insufficient to manifest a legislative intent that a statute which previously had been construed to require scienter be applied as one of strict liability.

*By the Court.*—Decision of the court of appeals is affirmed.

STEINMETZ, J. ( *dissenting.*) For several reasons, I agree with the state's position that the element of scienter no longer applies to first-offense OAR when the violation is subject only to civil penalties. First, the legislative history of sec. 343.44(1), Stats., shows a legislative intent to remove the element of scienter from first-offense OAR. In *Collova,* the dispositive factor in our determination to require the state to prove scienter in an OAR prosecution was the criminal penalties attached to OAR. *State v. Collova,* 79 Wis. 2d 473, 485, 255 N.W.2d 581 (1977). The legislature, in turn, responded to *Collova* by decriminalizing first-offense OAR. Removal of the dispositive factor relied upon in *Collova* evinces a legisla-

tive intent to remove the element of scienter from first-offense OAR. This is not a case of legislative silence with respect to the element of scienter. Rather, it is a positive removal of the scienter requirement in reaction to *Collova.*

I realize that the scienter element in the jury instruction for first-offense OAR was not removed after the offense became civil. Wis. J.I.—Criminal, Part IIA, 2620A. However, this instruction is not controlling authority, *State v. O'Neil,* 141 Wis. 2d 535, 541 n.1, 416 N.W.2d 77 (Ct. App. 1987), and should not be held as persuasive.

Second, the language of sec. 343.44, Stats., shows a legislative intent to remove the element of scienter from first-offense OAR. Section 343.44(1), which defines the offense of OAR, does not expressly require scienter. In addition, except for drivers of commercial vehicles and persons whose licenses have been revoked pursuant to chapter 351, the penalties for first-offense OAR are civil. *See* secs. 939.12, Stats. (crime defined); 343.44(2)(a) (penalties for first-offense OAR, noncommercial vehicle); 343.44(2g)(a) (penalties for first-offense OAR when revocation or suspension was for a listed offense, effective January 1, 1993); 343.44(2m)(a) (penalties for first-offense OAR, commercial vehicles); 343.44(4) (impoundment).

Third, for practical reasons, the element of scienter should be removed from first-offense OAR when the offense is subject only to civil penalties. When discussing *State v. Stoehr,* 134 Wis. 2d 66, 396 N.W.2d 177 (1986), the majority states the following: "In so holding, the court [in *Stoehr*] acknowledged the severity of the penalties involved but reasoned that the statute's legislative history, statutory language and purpose, and public policies warranted strict liability." Majority op. at 639–640.

645

The penalties at issue in *Stoehr* were criminal penalties. In that case, this court concluded that the offense at issue was one of strict liability despite the existence of criminal penalties.

To the contrary, the defendant in this case is not subject to criminal penalties. When the penalty attached to first-offense OAR is merely civil, scienter should not be an element of the offense. Are we to require scienter for the offenses of speeding, illegal U-turn, or illegal left turn? They are civil offenses which do not require proof of scienter. Sections 346.57, Stats. (speed restrictions); 346.60 (penalty for speeding); 346.31 (left turn); 346.33 (U-turn); 346.36 (penalties for illegal left turn and U-turn). The same is generally true for OAR first-offense.

In addition, OAR first-offense may be charged under an identical municipal ordinance and prosecuted in a municipal court. Will scienter now be required in municipal court?

Finally, observation of Wisconsin trial courts while first-offense OAR carried criminal penalties explains why the legislature decriminalized the offense. More than any other action, first-offense OAR was turning mere citizens into criminals. In addition, trial courts were overcrowded with first-offense OAR prosecutions because citizens faced with potential jail terms often asked for reduced charges and demanded jury trials. The practical effect of decriminalizing first offense-OAR was to eliminate jail sentences, decrease the demand for jury trials in busy courts, and eliminate plea bargains.

Fourth, the purpose of the OAR statute warrants removal of the scienter element from a first-offense violation. "When the legislature's goal is primarily to regulate, to accomplish a social good, or to obtain a high standard of care, proof of a criminal state of mind is often eliminated to achieve the desired result." *Stoehr,*

134 Wis. 2d at 79 (citing *State v. Collova,* 79 Wis. 2d at 485).

> Such offenses are most commonly found in areas such as food and drug handling and sale, the sale of intoxicating liquors to minors, traffic law violations, and sales of misbranded articles. In cases such as these it can be said that if sufficient care is exercised the proscribed conduct can be avoided in all but the exceptional instance. The persons to whom the regulations are directed are generally in a position to exercise such high degree of care; they will be encouraged to do so by the imposition of strict penal liability, and the penalties usually involved are such as to make the occasional punishment of one who has done everything that could have been done to avoid the violation a reasonable price to pay for the public benefit of the high standard of care that has been induced.

*Collova,* 79 Wis. 2d at 485.

For the foregoing reasons, I would reverse the court of appeals decision. Accordingly, I dissent.

I am authorized to state that JUSTICES ROLAND B. DAY and LOUIS J. CECI join this dissenting opinion.