STATE of Wisconsin, Plaintiff-Respondent,

v.

Curtis M. AGACKI, Defendant-Appellant.

Court of Appeals

*No. 97–3463–CR. Submitted on briefs December 1, 1998.—Decided April 13, 1999.*

(Also reported in 595 N.W.2d 31.)

On behalf of the defendant-appellant, the cause was submitted on the briefs of *John Miller Carroll,* of *John Miller Carroll, S.C.,* of Milwaukee.

On behalf of the plaintiff-respondent, the cause was submitted on the brief of *E. Michael McCann,* district attorney, and *Benbow P. Cheesman,* assistant district attorney, of Milwaukee.

Before Fine, Schudson and Curley, JJ.

SCHUDSON, J. Curtis M. Agacki appeals from the judgment of conviction entered after he pled guilty to carrying a concealed weapon, in violation of § 941.23, STATS. Contending that the trial court erred in denying his motion to suppress evidence, Agacki argues that

the police officer's basis for stopping him and seizing the gun came from a privileged communication with his psychotherapist and, therefore, that his disclosure to his psychotherapist was not admissible to support a finding of probable cause. We conclude, however, that Agacki's disclosure that he was carrying a gun was not a privileged communication under § 905.04, STATS., and, therefore, that the trial court correctly considered evidence of the communication. Accordingly, we affirm.

## I. BACKGROUND

The facts essential to the resolution of this appeal are undisputed. Evidence at the suppression motion hearing established that Agacki was a patient of David Baldridge, a licensed psychotherapist with a master's degree in social work.[1] Baldridge testified that on Friday, May 17, 1996, in a telephone conversation, Agacki told him that he had been in a fight at a restaurant and had missed several days of work. Concerned, Baldridge called Agacki the next day to check on him. Agacki then told him that he had "torched" a motorcycle after a bar fight, that he believed people were watching him, but that he was not afraid because, Agacki declared: "[I]f they try anything[,] I will pull my piece out and blow their fucking heads off. I will kill them. I don't care what happens to me . . . . I am not afraid of it[,] dying."

---

[1] The statutes we will be discussing refer to "patient[s]" of health professionals, including "psychologist[s]," "social worker[s]," "marriage and family therapist[s]," and "professional counselor[s]." *See* § 905.04(1)(b) and (2), STATS. Although the statutes do not refer to "psychotherapists," and although many of these professionals refer to those in treatment as "clients" rather than "patients," for convenience, we will employ the "psychotherapist-patient" terminology throughout this opinion.

Alarmed, Baldridge encouraged Agacki to see him and, fearing that Agacki was impaired by alcohol or medication, Baldridge suggested that they meet within walking distance of Agacki's residence. They agreed to get together later that afternoon at a tavern near Agacki's home.

Before leaving for the tavern, Baldridge telephoned the Milwaukee Police Department and requested assistance with what he believed might develop into the need for Agacki's mental health hospitalization. Baldridge then went to the tavern, waited for the police but, before police arrived, entered the tavern, where Agacki was waiting. They then sat at a table and talked. When Agacki, with words and gestures, indicated that he was armed, Baldridge excused himself, exited the tavern and alerted a police officer who was then waiting outside.

The evidence established that Baldridge informed Milwaukee Police Officer Charles Henn that Agacki was emotionally unstable, in need of hospitalization, and armed with a gun. Moments later, Agacki exited the tavern. Officer Henn stopped Agacki, frisked him, recovered an unloaded .41 caliber Smith and Wesson six-inch revolver from Agacki's left jacket pocket, and arrested him.

Agacki moved to suppress the statements and the gun, contending that his disclosure to his therapist was part of their confidential communication, protected by the psychotherapist-patient privilege of § 905.04, STATS.[2] Rejecting Agacki's argument, the trial court

[2] Agacki also asserted that he never made the alleged statements to Baldridge. The State therefore argues that Agacki should not be allowed to invoke the claim of privilege for statements he denies. Because we reach the merits of Agacki's primary theory on appeal, we need not address the State's

concluded that the privilege applied but, under *Schuster v. Altenberg*, 144 Wis. 2d 223, 424 N.W.2d 159 (1988), his disclosure about the gun fell within the exception for a psychotherapist's "duty to warn third parties or to institute proceedings for the detention or commitment of a dangerous individual for the protection of the patient or the public." *Id.* at 239–40, 424 N.W.2d at 166. Thus, the trial court explained:

> [T]he duty to institute commitment proceedings may be triggered not only by the threat an individual patient may pose to the public, but also by the threat an individual may pose to himself or herself. . . . The ethical duty of confidentiality finds exceptions where disclosure is necessary to protect the defendant.
>
> . . . .
>
> [T]here was a privilege but there was an exception, a public policy exception, and also that Mr. Baldridge was attempting to get Mr. Agacki into hospitalization.

Accordingly, the trial court concluded that Agacki's disclosure to Baldridge was admissible and could establish the basis for Officer Henn's seizure of the gun.

## II. ANALYSIS

 Generally, the admissibility of evidence is a matter within the trial court's discretion. *See State v. Pharr*, 115 Wis. 2d 334, 342, 340 N.W.2d 498, 501 (1983). Consequently, a trial court's evidentiary ruling will not

intriguing argument. *See Gross v. Hoffman*, 227 Wis. 296, 300, 277 N.W. 663, 665 (1938) (only dispositive issue need be addressed).

be upset on appeal if it had "a reasonable basis" and was made " 'in accordance with accepted legal standards and in accordance with the facts of record.' " *Id.* (citations omitted). To resolve the issue in this case, however, we must interpret the psychotherapist-patient privilege under § 905.04, STATS. The interpretation of a statute presents a question of law, which we review *de novo. See Ball v. District No. 4, Area Bd.*, 117 Wis. 2d 529, 537, 345 N.W.2d 389, 394 (1984).

■

The psychotherapist-patient privilege is a testimonial rule of evidence, not a substantive rule of law regulating the conduct of psychotherapists. *See Steinberg v. Jensen*, 194 Wis. 2d 439, 464, 534 N.W.2d 361, 370 (1995) (rules of evidence do not preclude communications made outside of court).[3] The privilege, however, applies "at all stages of actions, cases and proceedings" in court, § 911.01(3), STATS.,[4] including "[t]he determination of questions of fact preliminary to

---

[3] *See also* 64 Wis. Op. Att'y Gen. 82, 86 (1975):

Both decision and statute make plain, therefore, that communications between physician and patient are privileged only insofar as they might be made evidence at some stage of an action, case, or proceeding in state courts. And it is only in that instance that a patient peremptorily may prevent his physician from disclosing confidential communications. The physician-patient privilege, then, does not prohibit a physician from disclosing confidential communications of a patient prior to, or outside of, evidentiary court proceedings.

[4] Section 911.01(3), STATS., provides:

**(3)** PRIVILEGES; OATH. Chapter 905 with respect to privileges applies at all stages of all actions, cases and proceedings; s. 906.03 [regarding oath or affirmation] applies at all stages of all actions, cases and proceedings except as provided in ss. 901.04 (1) and 911.01 (4), and ch. 908.

admissibility of evidence," § 911.01(4)(a), STATS.,[5] and "[p]reliminary questions concerning . . . the existence of a privilege," § 901.04(1), STATS.[6] Thus, we must determine whether the psychotherapist-patient privilege can prevent a police officer, at a suppression motion hearing, from testifying about a psychotherapist's account of a patient's disclosure, which provided the basis for the officer's probable cause to search the patient.[7]

Section 905.04(2), STATS., states:

---

[5] Section 911.01(4)(a), STATS., provides:

(4) RULES OF EVIDENCE INAPPLICABLE. Chapters 901 to 911, other than ch. 905 with respect to privileges or s. 901.05 with respect to admissibility, do not apply in the following situations:

(a) *Preliminary questions of fact.* The determination of questions of fact preliminary to admissibility of evidence when the issue is to be determined by the judge under s. 901.04 (1).

[6] Section 901.04(1), STATS., provides:

**901.04 Preliminary questions. (1)** QUESTIONS OF ADMISSIBILITY GENERALLY. Preliminary questions concerning the qualification of a person to be a witness, the existence of a privilege, or the admissibility of evidence shall be determined by the judge, subject to sub. (2) and ss. 971.31 (11) and 972.11 (2). In making the determination the judge is bound by the rules of evidence only with respect to privileges and as provided in s. 901.05.

[7] The State suggests that, in this case, the privilege may have no applicability at all because it relates to potential *testimony* by a *psychotherapist*, not to a report by a psychotherapist to a police officer, and not to testimony by a police officer. *See, e.g., State v. Kunkel,* 137 Wis. 2d 172, 195, 404 N.W.2d 69, 79 (Ct. App. 1987) (explaining that "[b]ecause we conclude that the clergyman privilege is inapplicable to the out-of-court disclosures by the priest to the police, we need not decide whether the disclosures were indeed privileged under sec. 905.06(2), Stats. [the general rule of privilege for communications to members of the clergy]"). Although the State's argument has some merit, we do not take the "no applicability" short cut for three reasons.

GENERAL RULE OF PRIVILEGE. A patient has a privilege to refuse to disclose and to prevent any other person from disclosing confidential communications made or information obtained or disseminated for purposes of diagnosis or treatment of the patient's physical, mental or emotional condition, among the

First, as just noted, §§ 911.01(4)(a) and 901.04(1), STATS., may reasonably be read to preclude such a strict "no applicability" separation when considering the existence of a privilege and its possible impact on the admissibility of evidence. *See also Kunkel*, 137 Wis. 2d at 194, 404 N.W.2d at 79 (police not prohibited from using privileged disclosures as source for discovery of other evidence; only when the communications themselves are sought to be admitted into evidence in a judicial proceeding does the rule of exclusion apply).

Second, in this case, the evidence at the suppression motion hearing consisted, in substantial part, of a stipulation to the criminal complaint. As a result, many of the salient factors were presented not by Officer Henn's testimony, but rather, by Officer Henn's summary of Baldridge's reiteration of Agacki's communication.

Third, although concluding that the privilege has no possible applicability could short cut our analysis, it would provide no guidance to psychotherapists, police, lawyers, and courts in their continuing efforts to understand and apply the psychotherapist-patient privilege. Their confusion is understandable, particularly in light of the different analytical approaches of various courts. As one commentator observed:

> The exclusion of derivative evidence arising from an unauthorized disclosure of confidential communications is subject to various analyses by courts. The confusion in this area may stem from privileges' protection of interests extrinsic to the truth-seeking process. Once the confidence is disclosed, some courts treat privileges as if they applied at that instant, regardless of the requirement of an evidentiary proceeding.

James J. Dalessio, Comment, *Evidentiary Privileges and the Exclusion of Derivative Evidence: Commentary and Analysis*, 26 SAN DIEGO L. REV. 625, 659 (1989).

patient, the patient's physician, the patient's registered nurse, the patient's chiropractor, the patient's psychologist, the patient's social worker, the patient's marriage and family therapist, the patient's professional counselor or persons, including members of the patient's family, who are participating in the diagnosis or treatment under the direction of the physician, registered nurse, chiropractor, psychologist, social worker, marriage and family therapist or professional counselor.

The statute's purpose is to prevent the unnecessary disclosure of "confidential" information. *See Steinberg*, 194 Wis. 2d at 459, 534 N.W.2d at 368. Section 905.04(1)(b), STATS., defines "confidential":

A communication or information is "confidential" if not intended to be disclosed to 3rd persons other than those present to further the interest of the patient in the consultation, examination, or interview, or persons reasonably necessary for the transmission of the communication or information or persons who are participating in the diagnosis and treatment under the direction of the physician, registered nurse, chiropractor, psychologist, social worker, marriage and family therapist or professional counselor, including the members of the patient's family.

The public policy supporting the privilege is to encourage patients to candidly discuss health concerns with those treating them. *See Steinberg*, 194 Wis. 2d at 459, 534 N.W.2d at 368. Thus, while the psychotherapist-patient privilege generally is intended to facilitate treatment by assuring the confidentiality of therapeutic communication, the privilege does not automatically or absolutely foreclose the introduction

357

of such communication in court. *See Schuster*, 144 Wis. 2d at 250–51, 424 N.W.2d at 170.

Mental health professionals have not only a duty of confidentiality to their patients, but also a duty *to others* to exercise reasonable care in the treatment of their patients. *See id.* at 243, 424 N.W.2d at 167; *see also* 64 Wis. Op. Att'y Gen. at 88–89 (citing *Tarasoff v. Regents of the Univ. of Cal.*, 551 P.2d 334 (Cal. 1976)). Under certain circumstances, the duty to exercise reasonable care includes a duty to warn potential victims and/or contact the police. As the supreme court declared:

> The concern regarding the preservation of patient trust in the confidentiality of communications is legitimate, yet one which must yield in those limited circumstances where the public interest in safety from violent assault is threatened. The reason why the interest of public safety commands some limited intrusion upon confidentiality was well-explained in *Tarasoff*:
>
> > "Our current crowded and computerized society compels the interdependence of its members. In this risk-infested society we can hardly tolerate the further exposure to danger that would result from a concealed knowledge of the therapist that his patient was lethal."

*Schuster*, 144 Wis. 2d at 249, 424 N.W.2d at 170 (citation omitted).

Agacki, noting that *Schuster*'s recognition of the duty to warn exception was in a negligence case, argues that the supreme court's decision cannot substitute for the legislature's adoption of such an exception to an

evidentiary rule of privilege.[8] We disagree. Although § 905.04, Stats., does not list what often is referred to as the "dangerous patient exception" among its enumerated exceptions, *see* § 905.04(4)(a)–(i), the supreme court, in *Schuster*, implicitly adopted it. The court explained:

> We further note that, in Wisconsin, the principle that confidentiality of communications must give way to certain instances is reflected in the evidence code. In particular, section 905.04, Stats., accords to a patient a privilege to refuse to disclose and to prevent another person from disclosing confidential patient-therapist communications. However, an exception to this privilege is recognized: "There is no privilege under this rule as to communications and information relevant to an issue in proceedings to hospitalize the patient for mental illness, *if the physician . . . or psychologist in the course of diagnosis or treatment has determined that the patient is in need of hospitalization.*" Sec. 905.04(4)(a). (Emphasis added.) At the very least, the statutory exception to the evidentiary privilege suggests a balance struck by the legislature between patient confidentiality and public safety. *More generally, the exception to the general rule of privilege demonstrates that "the privilege is not sacrosanct and can properly be waived in the interest of public policy under appropriate circumstances."*

---

[8] We note that in *Schuster v. Altenberg*, 144 Wis. 2d 223, 251, 424 N.W.2d 159, 170 (1988), the supreme court erroneously implies that the legislature drafted the rules of evidence. As the concurrence clarifies, however, the rules of evidence were promulgated by the supreme court. *See* Concurrence slip op. at 1; *see also In re the Promulgation of Rules of Evidence for the State of Wisconsin*, 59 Wis. 2d R1 (1973).

359

*Schuster*, 144 Wis. 2d at 250–51, 424 N.W.2d at 170–71 (footnote and citation omitted; second emphasis added).

Further, articulating the exception "more generally" for the protection of the patient and the community, the supreme court solidly anchored its decision in the very principles of the psychotherapeutic professions. The court elaborated:

> As to the broader duty of confidentiality, we have considered the principles of medical ethics governing psychiatrists. Section 4 of The Principles of Medical Ethics adopted by the American Psychiatric Association provides generally:
>
>> "A physician shall respect the rights of patients, of colleagues, and of other health professionals, and shall safeguard patient confidences within the constraints of the law." American Psychiatric Association, The Principles of Medical Ethics with Annotations Especially Applicable to Psychiatry (1986 ed.).
>
> The annotations accompanying this general rule of confidentiality highlight the particularly sensitive nature of psychiatrist-patient communications but give recognition to the need for exception to this general rule of confidentiality:
>
>> "Because of the sensitive and private nature of the information with which the psychiatrist deals, he/she must be circumspect in the information that he/she chooses to disclose to others about a patient. The welfare of the patient must be a continuing consideration.

\* \* \*

> " *Psychiatrists at times may find it necessary, in order to protect the patient or the community from imminent danger, to reveal confidential information disclosed by the patient." Id.* (Emphasis added.)

Consequently, even under the broader ethical duty of confidentiality, this duty finds exception where disclosure is necessary "to protect the patient or the community from imminent danger." *Id.*

*Schuster*, 144 Wis. 2d at 251–52, 424 N.W.2d at 171.

█

This court presumes that the legislature is aware of appellate court decisions and, absent any legislative response to *Schuster*, the supreme court's adoption of the "dangerous patient exception" to the psychotherapist-patient privilege of § 905.04, STATS., provides the basis for resolution of this appeal. *See State v. Olson*, 175 Wis. 2d 628, 641, 498 N.W.2d 661, 666 (1993) (legislative silence with regard to new court-made decisions indicates legislative acquiescence in those decisions). Thus, we conclude that application of *Schuster* to the instant case represents not the creation of a new exception, but rather, the logical extension of *Schuster*'s holding.

In applying *Schuster* to the instant case, we gain guidance from *Tarasoff*, on which *Schuster* heavily relied, and its progeny. In *Tarasoff*, a psychiatric patient confided to his therapist that he intended to kill a woman. Two months later, the patient carried out his threat. The victim's parents sued the therapist. The California Supreme Court, articulating what has become known as "the *Tarasoff* duty," *see Schuster*, 144 Wis. 2d at 243–45, 424 N.W.2d at 167–70 (citing

*Tarasoff*, 551 P.2d at 340), held that psychotherapists have an affirmative duty to warn their patients' potential victims. The court explained:

> When a therapist determines, or pursuant to the standards of his profession should determine, that his patient presents a serious danger of violence to another, he incurs an obligation to use reasonable care to protect the intended victim against such danger. The discharge of this duty may require the therapist to take one or more of various steps, depending upon the nature of the case. Thus, it may call for him to warn the intended victim or others likely to apprise the victim of the danger, *to notify the police, or to take whatever other steps are reasonably necessary under the circumstances.*

*Tarasoff*, 551 P.2d at 340 (emphasis added). Our supreme court noted that "the duty which was recognized in *Tarasoff* was not limited to a duty to warn but extended to 'whatever other steps are reasonably necessary under the circumstances.' " *Schuster*, 144 Wis. 2d at 244, 424 N.W.2d at 168 (citation omitted). Indeed, the court acknowledged that *Tarasoff* "mandates a duty to protect," *id.* (internal quotation marks and quoted source omitted), and flatly rejected any "distinction between a psychotherapist's duty to warn on the basis of whether the patient particularizes potential victims of his or her violent tendencies or makes generalized statements of dangerous intent." *Id.* at 254, 424 N.W.2d at 172.

More recently, the California Supreme Court, articulating the standards for measuring the *Tarasoff* duty, clarified:

> [A] psychotherapist's *Tarasoff* warning to the patient's intended victim is not covered by the privi-

lege even if it relates an otherwise protected communication, provided that the conditions of the exception are satisfied, viz, there is *reasonable cause for the psychotherapist to believe that (1) the patient is dangerous and (2) disclosure of the communication is necessary to prevent any harm.*

*Menendez v. Superior Court*, 834 P.2d 786, 794 (Cal. 1992) (citing *People v. Wharton*, 809 P.2d 290 (Cal. 1991)) (emphasis added). These standards are sound. Thus, if "there is reasonable cause for the psychotherapist to believe that (1) the patient is dangerous and (2) disclosure of the communication is necessary to prevent any harm," *Menendez*, 834 P.2d at 794, a psychotherapist has a duty to warn and, of course, police have a duty to take appropriate action. It would be absurd, then, to impose a testimonial privilege to prevent courts from considering the very communication leading to the responsible and lawful conduct of the psychotherapist and the police officer.

Here, Baldridge had "reasonable cause . . . to believe" that his patient was dangerous and that contacting police would not only prevent harm to the public, but would also assist Agacki by facilitating his hospitalization. Accordingly, we conclude that Agacki's statements to his psychotherapist were not privileged; they fell within the dangerous patient exception. Thus, the trial court correctly considered the evidence of Officer Henn's basis for searching Agacki, and correctly denied Agacki's motion to suppress.

*By the Court.*—Judgment affirmed.

FINE, J. *(concurring).* I join in the majority opinion to the extent that it recognizes that the "public

safety" exception articulated in *Schuster v. Altenberg*, 144 Wis. 2d 223, 249, 424 N.W.2d 159, 170 (1988), applies in criminal cases, and that the supreme court, as the body that promulgated the rules of evidence, *see In re the Promulgation of Rules of Evidence for the State of Wisconsin*, 59 Wis. 2d R1 (1973), (not the legislature, as *Schuster*, 144 Wis. 2d at 251, 424 N.W.2d at 170, states erroneously), may interpret them consistent with common sense and with the common weal. I write separately to also emphasize that the privilege here gives way to permit evidentiary use in court of an out-of-court disclosure of a confidential communication that was about the patient's future intent and acts, not about events antedating the confidential communication and described in that communication. *Cf.* RULE 905.03(4)(a), STATS. (crime/fraud exception to the attorney-client privilege).