IN RE the COMMITMENT OF MATTHEW A.B.:

STATE of Wisconsin, Petitioner-Respondent,

v.

MATTHEW A.B., Appellant.†

Court of Appeals

*No. 98–0229. Submitted on briefs September 3, 1999.—Decided November 30, 1999.*

(Also reported in 605 N.W.2d 598.)

†Petition to review denied.

On behalf of the appellant, the cause was submitted on the briefs of *Mary E. Waitrovich,* assistant state public defender.

On behalf of the petitioner-respondent, the cause was submitted on the brief of *James E. Doyle*, attorney general, and *Warren D. Weinstein*, assistant attorney general.

Before Wedemeyer, P.J., Fine and Curley, JJ.

¶ 1. CURLEY, J. Matthew A. B. appeals from the order committing him as a sexually violent person under Chapter 980, and the order denying his postcommitment motions. On appeal, Matthew argues that he was denied the effective assistance of counsel because trial counsel failed to raise the following issues: (1) whether the probable cause hearing was held within 72 hours of the filing of the Chapter 980 petition, as required by § 980.04(2), STATS.; (2) whether the trial was held within 45 days of the probable cause hearing, as required by § 980.05(1), STATS.,[1] (3) whether the trial court erroneously admitted Matthew's juvenile delinquency adjudication; (4) whether Chapter 980 is unconstitutional as applied to Matthew because Matthew's "conduct disorder" is too imprecise a diagnosis of a mental disorder to pass due process muster; (5) whether Chapter 980 is unconstitutional as applied to Matthew because there is no reasonable basis for identifying a predisposition to commit future acts of sexual violence in juveniles; (6) whether the trial court's reli-

---

[1] With regard to issues (1) and (2), Matthew also argues that if either the 72-hour or the 45-day time periods were violated, then the trial court lost competency to proceed. Matthew claims that trial counsel's failure to raise the competency issue constitutes ineffective assistance.

ance on WIS JI—CRIMINAL 2502 violated Matthew's due process rights because the instruction fails to define "substantially probable"; and (7) whether the trial court's reliance on WIS JI—CRIMINAL 2502 violated Matthew's equal protection rights because the instruction fails to define "substantially probable" to mean "extremely likely." After addressing the merits of each of these issues, we are satisfied that, even if trial counsel had raised these issues at trial, it is not reasonably probable that the outcome of the proceeding would have been different. Therefore, we conclude that Matthew is unable to demonstrate that counsel's failure to raise these issues was prejudicial, and we hold that Matthew was not denied the effective assistance of trial counsel. Accordingly, we affirm the trial court's order.

## I. BACKGROUND.

¶ 2. Matthew A. B. was found to be a sexually violent person under Chapter 980, and was committed to the custody of the Department of Health and Family Services after a court trial. The State commenced the commitment proceedings against Matthew after Matthew engaged in two consensual sexual acts with another boy while the two boys were in custody at Lincoln Hills School. Matthew was only sixteen years old when the Chapter 980 commitment proceedings began, but he already had a history of non-sexual incidents resulting in several out-of-home placements.

¶ 3. The record reflects that Matthew was placed in various institutions due to several incidents of violent behavior. Specifically, Matthew was involved in a gang situation on a school playground and was charged with disorderly conduct while armed when it was discovered that he was carrying a knife. In a second

incident, Matthew was charged with attempted armed robbery after trying to rob a jogger while armed with a BB gun. Matthew's parents also reported several incidents that occurred at home, leading them to believe he was out of control. Matthew's parents reported that he broke windows and doors, stole knives, lighters, and money, threatened to kill them in their sleep, and physically abused his mother and brother. As a result of Matthew's behavior, he was placed in several treatment centers, including a lengthy stay at St. Aemilian's Residential Treatment Center.

¶ 4. Not long after his release from St. Aemilian's, Matthew attempted to burn down a garage and he was charged with arson. As a result of this incident, he was returned to St. Aemilian's. At St. Aemilian's, Matthew attempted to run away and engaged in other disruptive behavior, resulting in his transfer to Lincoln Hills School. Initially, at Lincoln Hills, Matthew's behavior did not improve; however, he eventually earned his release and was transferred back to St. Aemilian's.

¶ 5. Shortly after returning to St. Aemilian's, Matthew had sexual contact with a thirteen-year-old male resident. The report of the incident stated that Matthew offered the boy drugs and/or money in exchange for oral sex, although the incident was, apparently, completely consensual. As a result of the incident, Matthew was returned to Lincoln Hills and subsequently adjudicated delinquent for committing second-degree sexual assault of a child.

¶ 6. When Matthew returned to Lincoln Hills, the staff evaluated him for a possible Chapter 980 commitment as a result of his delinquency adjudication, but decided against filing a petition. Then, shortly after his return, Matthew and another boy attacked a third

boy. Criminal charges were filed against Matthew. He was waived into adult court and convicted of battery to an inmate. After the conviction, while still at Lincoln Hills, Matthew engaged in two acts of consensual sexual contact with a fifteen-year-old boy. While these two incidents of sexual contact did not result in a delinquency adjudication or criminal charges, they did trigger a re-evaluation of Matthew for possible Chapter 980 commitment. This time the staff decided a Chapter 980 commitment was warranted.

¶ 7. The State filed a petition seeking Matthew's detention as a sexually violent person under Chapter 980. At the probable cause hearing, the trial court found probable cause to believe that Matthew was a sexually violent person under Chapter 980 and ordered him to remain in custody for evaluation. At trial, all four experts testified that Matthew had a "conduct disorder." However, the expert witnesses offered contradictory testimony as to whether it was substantially probable that Matthew would engage in future acts of sexual violence, as required by § 980.02(2)(c), STATS. Matthew's experts asserted that it was not substantially probable that he would engage in future acts of sexual violence, while the State's experts testified that Matthew's engagement in future acts of sexual violence was substantially probable. The trial court agreed with the State and found that, due to Matthew's conduct disorder, it was substantially probable that he would engage in future acts of sexual violence.

¶ 8. As a consequence, the trial court found that Matthew was a sexually violent person as alleged in the Chapter 980 petition and ordered Matthew committed to institutional care in a secure mental health unit or facility. Matthew was delivered into the custody of the Department of Health and Family Services for

control, care and treatment. Matthew filed motions after his commitment seeking dismissal of the action, or in the alternative, a new trial. The trial court denied Matthew's postcommitment motion.

¶ 9. Matthew, represented by new counsel, appealed the Chapter 980 commitment order and the order denying his postcommitment motion. But, in reviewing the matter, Matthew's new attorney concluded that there were ineffective assistance of counsel issues that needed to be addressed in the circuit court. Matthew's attorney filed a motion to stay the appeal and remand the case to the trial court for further proceedings on the ineffective assistance of counsel issues. This court stayed the appeal and remanded the matter to the circuit court. On remand, Matthew filed a motion to vacate the Chapter 980 commitment, or in the alternative, for the grant of a new trial. In his motion, Matthew raised several substantive claims of error, as well as a claim of ineffective assistance of trial counsel. The trial court denied all of Matthew's claims of error, and denied his claim of ineffective assistance of trial counsel without a hearing. Matthew appeals.

## II. ANALYSIS.

¶ 10. On appeal, Matthew again raises several substantive claims: (1) the probable cause hearing was not held within 72 hours of filing the petition as required by § 980.04(2), STATS., and therefore, the trial court lost competency to proceed; (2) the trial was not held within 45 days of the probable cause hearing as required by § 980.05(1), STATS., and therefore, the trial court lost competency to proceed; (3) the trial court erroneously admitted Matthew's juvenile delinquency disposition; (4) Chapter 980 is unconstitutional as applied to Matthew, because a "conduct disorder" is too

697

imprecise a category to provide a nexus between the diagnosis and predisposition to commit acts of sexual violence; (5) Chapter 980 is unconstitutional as applied to Matthew because the evidence revealed no reasonable basis for predicting sexual dangerousness in juveniles; (6) the trial court violated Matthew's due process rights by relying on WIS JI—CRIMINAL 2502, because it does not define "substantially probable"; and (7) the trial court's reliance on WIS JI—CRIMINAL 2502 violated Matthew's equal protection rights, because it does not define "substantially probable" as "extremely likely." Matthew also argues that trial counsel's failure to raise each of these issues constitutes ineffective assistance of counsel. Matthew requests that this court vacate and dismiss the commitment order, or in the alternative, grant a new trial. We affirm.

¶ 11. We analyze Matthew's appeal as an appeal from an order denying a postcommitment motion for ineffective assistance of trial counsel. As indicated above, we remanded Matthew's motion to the trial court to consider Matthew's claim of ineffective assistance of counsel. The trial court found that Matthew was not deprived of the effective assistance of counsel and denied his motion without a hearing. Matthew appeals from this decision.

¶ 12. We decide the issues raised in Matthew's appeal by applying the appropriate ineffective assistance of counsel methodology. To demonstrate ineffective assistance of trial counsel, Matthew must prove (1) deficient performance and (2) prejudice. *See Strickland v. Washington*, 466 U.S. 668, 687 (1984); *see also State v. Sanchez*, 201 Wis. 2d 219, 236, 548 N.W.2d 69, 76 (1996) (holding that the *Strickland* analysis applies to ineffective assistance claims under the state

constitution). We will not overturn the trial court's findings of fact unless they are clearly erroneous. *See State v. Pitsch*, 124 Wis. 2d 628, 634, 369 N.W.2d 711, 714 (1985). However, whether the defendant has provided adequate proof of either prong is a question of law which this court reviews *de novo. See id.* at 634, 369 N.W.2d at 715. If this court concludes that the defendant has not proven one prong, we need not address the other prong. *See Strickland*, 466 U.S. at 697. After reviewing the record, we conclude that we need not address the deficient performance prong because the record conclusively demonstrates that Matthew is unable to establish prejudice. *See State v. Bentley*, 201 Wis. 2d 303, 309–10, 548 N.W.2d 50, 53 (1996) (" '[I]f the record conclusively demonstrates that the defendant is not entitled to relief, the trial court may in the exercise of its legal discretion deny the motion without a hearing.' ").

¶ 13. To prove prejudice, Matthew must show that his trial counsel's errors were so serious that they deprived Matthew of a fair trial and a reliable outcome. *See Strickland*, 466 U.S. at 687. In other words, Matthew "must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome." *Id.* at 694. We are satisfied that Matthew cannot make the requisite showing.

■■

¶ 14. We conclude that Matthew is unable to show a reasonable probability that the result of his trial would have been different, but for counsel's alleged errors. On remand, Matthew raised multiple substantive issues that he argued entitled him to dismissal of the commitment order, or a new trial.

Matthew acknowledges that none of these issues were raised at trial; however, Matthew asserts that it is precisely because trial counsel failed to raise these issues at trial, that he was denied the effective assistance of counsel. The trial court found that the record conclusively demonstrated that each of the substantive issues lacked merit and, therefore, concluded that counsel's failure to raise them was not prejudicial. We agree. *See State v. Toliver*, 187 Wis. 2d 346, 360, 523 N.W.2d 113, 118 (Ct. App. 1994) (holding that court of appeals will not conclude that defendant's counsel was ineffective for failing to pursue meritless arguments). Because we review the trial court's decision as a denial of a postcommitment motion for ineffective assistance of counsel, we address the substantive issues only as they relate to Matthew's claim of ineffective assistance. Therefore, we shall first address Matthew's substantive claims to determine whether they possess any arguable merit.

A. The trial court's finding, that the probable cause hearing was held within 72 hours of filing the Chapter 980 petition, was not clearly erroneous.

¶ 15. Whenever a Chapter 980 petition is filed, the trial court must hold a probable cause hearing to determine whether there is probable cause to find that the person named in the petition is a sexually violent person. *See* § 980.04(2), STATS. Section 980.04(2) requires the trial court to hold the probable cause hearing within 72 hours, excluding Saturdays, Sundays and legal holidays, of the filing of the petition if the named person is in custody. It is undisputed that Matthew was in custody as an inmate at Lincoln Hills School when the State filed the Chapter 980 petition

alleging that Matthew was a sexually violent person. Therefore, § 980.04(2) required the trial court to hold a probable cause hearing within 72 hours of filing the petition. The trial court found that Matthew's probable cause hearing was held within the 72-hour time limit. We agree.

¶ 16. This court will not overturn the trial court's findings of fact unless they are clearly erroneous. *See* § 805.17(2), STATS.; *see, e.g., State v. Smith*, 207 Wis. 2d 258, 266, 558 N.W.2d 379, 382 (1997). This issue turns on the trial court's finding that the probable cause hearing was held within 72 hours of filing the Chapter 980 petition. Matthew argues that the trial court's finding is unsupported by the record and is clearly erroneous. Matthew asserts that without any information in the record indicating the date and time of day that either the petition was filed or the probable cause hearing was held, it is impossible to certify that the hearing was held within the 72-hour time limit. We are satisfied that there is sufficient evidence in the record to support the trial court's finding that the probable cause hearing was held within 72 hours of filing the petition.

¶ 17. The trial court found that the petition was filed on November 21, 1996. Although the petition does not bear a date stamp or an indication of the time it was filed, it is signed and dated November 21, 1996. In its decision, the trial court notes that November 21, 1996, was a Thursday, and because the 72-hour time limit does not include weekends, the time limit expired on Tuesday, November 26, 1996. The record reveals that the trial court ordered that the probable cause hearing be held at 10:00 a.m. on November 26, 1996. Further, we note that the transcript of the probable cause hearing and the trial court's findings and orders based upon

the probable cause hearing are dated November 26, 1996. The trial court found that the probable cause hearing was in fact held on November 26, 1996, within the 72-hour time limit. Therefore, the trial court concluded that Matthew had failed to satisfy his burden of demonstrating that the hearing had not been held within the 72-hour time limit. We are satisfied that the trial court's finding, that Matthew's probable cause hearing was held within 72 hours of filing the Chapter 980 petition, was not clearly erroneous.[2]

B. The trial court's finding, that there was good cause to delay the trial beyond the 45-day time limit, was not clearly erroneous.

¶ 18. Section 980.05(1), STATS., requires that a trial to determine whether a person named in a Chapter 980 petition is a sexually violent person must begin "no later than 45 days" after the probable cause hearing. However, the time limit can be extended beyond the 45-day limit, if the trial court finds good cause for a continuance, "upon its own motion, the motion of any party or the stipulation of the parties." Section 980.05(1), STATS. Here, the probable cause hearing was held on November 26, 1996, and the trial did not begin until September 15, 1997. It is undisputed that the trial did not begin until after the 45-day time limit had expired. However, the court assigned to the postconviction motion found that the trial court's failure to begin

---

[2] Because we are satisfied that the trial court's finding was not clearly erroneous, and we agree with the trial court that Matthew's probable cause hearing was held within the 72-hour time limit, we need not consider Matthew's ancillary argument that the trial court lacked competency to proceed when the time limit was violated.

the trial within the 45-day time limit was for good cause. We will not reverse this finding unless it is clearly erroneous. *See Smith*, 207 Wis. 2d at 266, 558 N.W.2d at 383.

¶ 19. Matthew argues that the record is devoid of any references to a continuance sought by the court, by motion of the parties, or by stipulation. Matthew asserts that neither party ever formally asked for a continuance, and he argues that one cannot now be granted retrospectively. Therefore, Matthew contends that by failing to seek a continuance prior to the expiration of the 45-day limit, the State has waived the right to argue on appeal that there was good cause for a continuance at that time. Matthew concludes that the trial court lacked competence to proceed to trial after the expiration of the 45-day time limit. We disagree.

¶ 20. The record clearly reflects that each of the delays can be easily construed as a continuance sought by the court, by motion of the parties, or by stipulation of the parties. The record reveals that the trial was postponed several times. The probable cause hearing was held on November 26, 1996, and the 45-day limit expired on January 10, 1997. At the probable cause hearing the trial court offered a trial date of January 27, 1997. Matthew's attorney was unavailable for trial on January 27, so the court suggested, and the parties agreed, on a trial date of February 10, 1997. Matthew's attorney then filed a writ of habeas corpus in the Wisconsin Supreme Court, and the court stayed all proceedings.[3]

_____

[3] We note that Matthew's attorney filed the writ of habeas corpus, and the Wisconsin Supreme Court stayed the proceedings, before the 45-day limit expired. Therefore, even if the original trial date had been set within the 45-day limit, the supreme court's stay would have prohibited the trial court from

¶ 21. The Wisconsin Supreme Court's order prohibited further proceedings in the trial court until the stay was lifted on April 15, 1997. Once the order was lifted, the parties agreed to a trial date of July 14, 1997. However, on that date the trial court had another trial in progress and the case was assigned to a different judge. Matthew's attorney promptly filed a substitution requiring a third judge to assume responsibility over the case. The trial was postponed once again with a final trial date of September 15, 1997. The trial began on that date. In its decision on Matthew's postcommitment motion, the trial court asserted that Matthew's attorney caused many of the delays, and Matthew cannot now be heard to complain about them. The trial court concluded that each of these delays amounted to continuances for good cause sought by the court, by motion of the parties, or by stipulation. We agree and we are satisfied that the trial court's findings are not clearly erroneous. Thus, we conclude that the trial court did not lose competency to proceed when the trial commenced after the 45-day time limit expired.

### C. The trial court did not err by admitting Matthew's juvenile adjudication.

¶ 22. To decide this issue we must interpret various statutory sections. Statutory interpretation presents this court with a question of law that we review *de novo*. *See State v. Olson*, 175 Wis. 2d 628,

beginning the trial. The trial court found that filing the writ and the court's subsequent order established good cause for a continuance, and the trial court asserted that Matthew cannot now be heard to complain about the delay. We agree.

633, 498 N.W.2d 661, 663 (1993). When interpreting a statute, our main objective is to ascertain and give effect to the intent of the legislature. *See id.* We are satisfied that the legislature clearly intended a juvenile's delinquency adjudication to be admissible in Chapter 980 proceedings.

¶ 23. As noted, Matthew was previously adjudicated delinquent for second-degree sexual assault of a child, contrary to § 948.02, STATS., as a result of an act of consensual oral sex with a thirteen-year-old male resident at St. Aemilian's. This delinquency adjudication was admitted as evidence in the instant matter at both the probable cause hearing, and as a matter of judicial notice at trial. Matthew argues that the trial court violated his due process rights by admitting the delinquency adjudication because to do so is contrary to § 938.35(1), STATS.[4] However, the State identifies various statutory sections that it argues clearly express the

---

[4] Section 938.35(1), STATS., in relevant part, requires that:

**(1)** The court shall enter a judgment setting forth the court's findings and disposition in the proceeding. A judgment in a proceeding on a petition under this chapter is not a conviction of a crime, does not impose any civil disabilities ordinarily resulting from the conviction of a crime and does not operate to disqualify the juvenile in any civil service application or appointment. The disposition of a juvenile, and any record of evidence given in a hearing in court, is not admissible as evidence against the juvenile in any case or proceeding in any other court except for the following:

(a) In sentencing proceedings after conviction of a felony or misdemeanor and then only for the purpose of a presentence investigation.

(b) In a proceeding in any court assigned to exercise jurisdiction under this chapter and ch. 48.

(c) In a court of civil or criminal jurisdiction while it is exercising jurisdiction over an action affecting the family and is considering the custody of a juvenile.

(cm) In a court of civil or criminal jurisdiction for purposes of setting bail under ch. 969 or impeaching a witness under s. 906.09.

legislature's intent to allow the admission of delinquency adjudications in Chapter 980 proceedings. As such, the State contends that § 938.35(1) was repealed by implication and, therefore, asserts that Matthew's delinquency adjudication was admissible. We agree.

¶ 24. The State's position that, "to the extent necessary to admit juvenile adjudications in ch. 980 proceedings, the legislature repealed Wis. Stat. § 938.35(1) by implication," is not favored in Wisconsin law. *See, e.g., Manthe v. Town Board*, 204 Wis. 2d 546, 554, 555 N.W.2d 167, 171 (Ct. App. 1996) ("Repeal by implication is not a favored legal concept."). This court will only conclude that a statutory provision has been repealed by implication when the conflicting provisions are "so contrary to or irreconcilable with" one another that only one of the provisions may remain in force. *Id.*; *Heaton v. Independent Mortuary Corp.*, 97 Wis. 2d 379, 392–93, 294 N.W.2d 15, 22 (1980) ("The earlier act will be considered to remain in force unless it is so manifestly inconsistent and repugnant to the later act that they cannot reasonably stand together."). This court will not "lightly or quickly" conclude that statutory provisions are irreconcilable. *See Manthe*, 204 Wis. 2d at 554, 555 N.W.2d at 171. We must reasonably construe statutes to avoid conflicts, and when statutes do conflict, we must attempt to harmonize them. *See State v. Szulczewski*, 216 Wis. 2d 495, 503, 574 N.W.2d 660, 664 (1998). Here, each side relies on conflicting statutory provisions to support its conclusion. Therefore, to decide this issue, we must first determine whether it is possible to harmonize § 938.35(1) and the various pro-

(d) The fact that a juvenile has been adjudged delinquent on the basis of unlawfully and intentionally killing a person is admissible for the purpose of s. 852.01 (2m) (bg) [s. 854.14 (5) (b)].

706

visions of Chapter 980, or whether the provisions are irreconcilable.

¶ 25. We are unable to reasonably construe the statutes to avoid conflict, and we conclude that the statutory provisions are irreconcilable. Matthew argues that the legislature has clearly expressed its intent to *prohibit* the admission of delinquency adjudications in Chapter 980 proceedings, whereas the State asserts that the legislature has clearly expressed its intent to *allow* the admission of delinquency adjudications in Chapter 980 proceedings. Matthew asserts that the plain language of § 938.35(1), STATS., prohibits the admission of juvenile adjudications in Chapter 980 proceedings. Indeed, § 938.35(1) renders juvenile dispositions inadmissible "as evidence against the juvenile in any case or proceeding in any other court" with several, specifically enumerated exceptions. There is no exception listed in § 938.35(1) for Chapter 980 proceedings. The State acknowledges that a strict reading of § 938.35(1) absolutely bars the admission of juvenile dispositions from Chapter 980 proceedings. However, the State contends that such a strict reading actually "defeat[s] the manifest intent of the legislature" because several statutory provisions allow the State to disclose delinquency adjudications in Chapter 980 proceedings. Therefore, the State concludes that the legislature intended juvenile adjudications to be admissible in Chapter 980 proceedings. We agree.

¶ 26. In deciding this issue, we must interpret the relevant statutory provisions in Chapter 980 as well as related provisions in Chapter 938. As noted, our main objective is to ascertain and give effect to the legislature's intent. *See Olson*, 175 Wis. 2d at 633, 498 N.W.2d at 663. In order to do so, we first look to the

plain language of the statutory provisions. *See State v. Sweat*, 208 Wis. 2d 409, 415, 561 N.W.2d 695, 697 (1997). If the statute's meaning is clear from the language, we simply apply the statute to the facts of the case. *See id.* When construing statutory provisions we must consider the entire statutory section as well as related sections. *See id.* at 416, 561 N.W.2d at 698. The statutory provisions in Chapter 980 and related provisions in Chapter 938 demonstrate the legislature's intent to allow the admission of delinquency adjudications in Chapter 980 proceedings.

¶ 27. Several statutory provisions in Chapter 938 provide for the disclosure of delinquency adjudications. Collectively, §§ 938.396(2)(e) and 938.78(2)(e), STATS., allow the Department of Corrections to review the records of and/or provide information about individuals adjudicated delinquent for a sexually violent offense as defined in § 980.01(6), STATS. Section 938.78(2)(e) specifically allows the department to disclose information about delinquency adjudications to "a judge acting under ch. 980 or to an attorney who represents a person subject to a petition under ch. 980." In addition to the statutory provisions in Chapter 938, numerous provisions in Chapter 980 indicate that delinquency adjudications are admissible. For example, the definitions of "serious child sex offender" and "sexually violent person" contained in § 980.01, both include a person who has been adjudicated delinquent. Section 980.02(2)(a)2, STATS., requires petitions filed under Chapter 980 to allege that the person named in the petition has been found delinquent for a sexually violent offense, if that criteria applies, and § 980.05(3), STATS., requires the state to prove the allegation. Therefore, we are satisfied that the plain language of these related statutory provisions clearly demon-

strates that the legislature intended to permit the admission of delinquency adjudications in Chapter 980 proceedings.

¶ 28. If we were to accept Matthew's argument and construe § 938.35(1), STATS., as an absolute bar to the admission of delinquency adjudications in Chapter 980 proceedings, we would render large portions of Chapter 980 meaningless. "Construing one statute to void others would make no sense and would lead to unreasonable and absurd results. 'Courts must look to the common sense meaning of a statute to avoid unreasonable and absurd results.'" *City of Milwaukee v. Kilgore*, 185 Wis. 2d 499, 516, 517 N.W.2d 689, 696 (Ct. App. 1994) (quoted source omitted). Rendering portions of Chapter 980 meaningless by prohibiting the admission of delinquency adjudications is clearly an absurd result. To avoid this result, we conclude that the common sense meaning of these statutory provisions dictates that delinquency adjudications are admissible in Chapter 980 proceedings. Furthermore, we are satisfied that giving effect to § 938.35(1) to prevent the admission of delinquency adjudications in Chapter 980 proceedings is "so contrary to or irreconcilable with" various provisions of Chapter 980 that only one of the provisions may remain in force. Therefore, to the extent that § 938.35(1) prohibits the admission of delinquency adjudications in Chapter 980 proceedings, we conclude that § 938.35(1) is repealed by implication.

D. Chapter 980 is not unconstitutional as applied to Matthew A.B.

¶ 29. A challenge to the constitutionality of a statute presents this court with a question of law that

we review *de novo. See State v. Post*, 197 Wis. 2d 279, 301, 541 N.W.2d 115, 121 (1995). Legislative enactments enjoy a presumption of constitutionality and, therefore, we must indulge "every presumption favoring validity of the law." *Id.* As the challenger, Matthew bears the burden of proving beyond a reasonable doubt that Chapter 980 is unconstitutional as applied to him. *See id.*

### 1. The diagnosis of a "conduct disorder" satisfies due process standards.

¶ 30. Matthew argues that Chapter 980 is unconstitutional as applied in this case because a "conduct disorder" is too imprecise a category to satisfy due process standards. Matthew asserts that a "conduct disorder" fails to provide the required nexus between the diagnosis and a predisposition to commit acts of sexual violence. To support this proposition Matthew relies on specific language from *Post*, which asserted that:

> [t]he key to the constitutionality of the definition of mental disorder in chapter 980 is that it requires a nexus—persons will not fall within chapter 980's reach unless they are diagnosed with a disorder that has the specific effect of predisposing them to engage in acts of sexual violence.

*Id.* at 306, 541 N.W.2d at 124. Matthew then compares his diagnosis of a conduct disorder, with the diagnoses that served as the underpinnings for the commitments in both *Post,* and *State v. Carpenter*, 197 Wis. 2d 252, 541 N.W.2d 105 (1995). Matthew asserts that the diagnoses in *Post* and *Carpenter* "contain[ed] sexual disorders of some kind, which supplied the required 'nexus.' " Matthew concludes that because a conduct

disorder is not a sexual disorder that predisposes him to engage in acts of sexual violence, the diagnosis fails to satisfy the nexus requirement and, therefore, his commitment violates his due process rights. We disagree and conclude that Matthew has not properly applied the nexus requirement.

¶ 31. In *State v. Adams*, 223 Wis. 2d 60, 588 N.W.2d 336 (Ct. App. 1998), this court rejected an argument similar to the argument Matthew makes here. Adams, like Matthew, compared his diagnosis to those relied upon in the *Post* and *Carpenter* commitments. Adams argued that his diagnosis of an "antisocial personality disorder" was too imprecise a diagnosis to satisfy due process standards. *See Adams*, 223 Wis. 2d at 69, 588 N.W.2d at 340. In rejecting *Adams'* argument, this court concluded that:

> [T]he fact that the defendants in *Post* and *Carpenter* suffered from additional conditions does not preclude the commitment of persons diagnosed only with "antisocial personality disorder." And the fact that "antisocial personality disorder," standing alone without any other diagnosis or *evidence*, could never lead to a finding that a defendant, without a history of sex offenses, is a "sexually violent person," does not mean that that condition, *in combination with evidence satisfying the additional criteria of § 980.01(7),* STATS., *cannot constitutionally support that finding.*

*Id.* at 70, 588 N.W.2d at 340–41. We are satisfied that this reasoning is equally applicable to the diagnosis of a conduct disorder in the instant case. Therefore, Matthew's conduct disorder, standing alone, may not fulfill the definition of a sexually violent person, but his conduct disorder in combination with any evidence that

would satisfy the additional criteria of § 980.01(7)[5] could support the finding that he is a sexually violent person.

¶ 32. The additional showing necessary to demonstrate that Matthew's conduct disorder predisposed him to sexually violent acts was supplied at trial. The additional evidence was supplied by Matthew's delinquency adjudication for a sexually violent offense, as well as the testimony at trial of the various expert witnesses. As we discussed thoroughly in subsection C above, Matthew's juvenile adjudication for a sexually violent offense was properly admitted as evidence against Matthew at both the probable cause hearing and at trial. Each expert witness testified at trial that a conduct disorder could predispose certain people to commit acts of sexual violence. For example, Dr. Ronald M. Sindberg testified that a:

> [c]onduct disorder as defined in the DSM-IV, they [sic] talk about a repetitive and persistent pattern of behavior in which the basic rights of others or major age-appropriate societal norms or rules are violated. And then it's broken down into these behaviors, fall [sic] in four main groups: aggressive conduct that causes or threatens physical harm to other people or animals; non-aggressive conduct

---

[5] Section 980.01(7), STATS., defines a "sexually violent person" as

[A] person who has been convicted of a sexually violent offense, has been adjudicated delinquent for a sexually violent offense, or has been found not guilty of or not responsible for a sexually violent offense by reason of insanity or mental disease, defect or illness, and who is dangerous because he or she suffers from a mental disorder that makes it substantially probable that the person will engage in acts of sexual violence.

that causes property loss or damage; deceitfulness or theft; and serious violations of rules.

And Dr. Thomas F. Mueller testified that:

> [M]any people who have a conduct disorder would not, in my opinion, have a mental disorder that predisposes them to sexual activity. However, in this case, given that Matthew previously engaged in a sexual assault, something that was adjudicated, then was placed in a juvenile correctional facility as a result of that behavior, placed in treatment, placed in a very high security facility, and had other charges pending, despite all of that, the fact that he again engaged in the sexual behavior indicates a strong predisposition toward this kind of behavior and a great or high likelihood that if he were placed in any other setting that kind of behavior would continue.

Therefore, we are satisfied that Matthew's diagnosis of a conduct disorder, when considered in conjunction with his delinquency adjudication and the testimony of the expert witnesses, creates a sufficient nexus between the diagnosis and a predisposition to commit sexually violent acts. We conclude that Matthew's diagnosis of a conduct disorder is not too imprecise a category to satisfy due process standards.

2. *The trial court did not violate Matthew's due process rights by relying on the criteria for predicting future acts of sexual violence used by the State's expert witnesses.*

¶ 33. Matthew argues that Chapter 980 is unconstitutional as applied in this case because the criteria for predicting future acts of sexual violence, used here by the State's expert witnesses, are relevant only to

adult offenders. The State's expert witnesses assessed the likelihood that Matthew would commit future acts of sexual violence by applying the "Doren criteria." However, Matthew maintains that because the Doren criteria were developed based on research involving adults, the criteria are inapplicable to juveniles. Matthew asserts that, in fact, the evidence presented here illustrated that juveniles have a lower propensity to reoffend in sexual violence situations. Therefore, Matthew concludes that because there is no reasonable basis for predicting sexual dangerousness in juveniles, Chapter 980 is unconstitutional as applied in this case. We disagree.

¶ 34. The Wisconsin Supreme Court has previously acknowledged the difficulty of predicting future dangerousness, *see Post*, 197 Wis. 2d at 312, 541 N.W.2d at 126, as well as the functional disparity between legal and medical definitions, *see id.* at 305 n.13, 541 N.W.2d at 123 n.13 (recognizing "the 'imperfect fit' between the law and clinical diagnosis which is exacerbated by the legal necessity for information that falls outside of that relevant to psychiatric categorical designations."). However, the supreme court asserted that, although such predictions are difficult, "they are still an attainable, in fact essential, part of our judicial process." *Id.* at 312, 541 N.W.2d at 126. In the instant case, Matthew has challenged the constitutionality of his commitment, claiming that there is no reasonable basis for predicting future dangerousness in juveniles. Consistent with the *Post* decision, we note that although such a prediction may be difficult, it is not impossible, and is, in fact, essential under Chapter 980.

¶ 35. We are satisfied that the prediction of Matthew's future dangerousness did not violate due

process standards for several reasons. First, the State's expert witnesses acknowledged that the Doren criteria, used to determine Matthew's future dangerousness, were compiled in relation to adults and, therefore, the experts gave more weight to the factors applicable to juveniles. Second, as the trial court asserted:

> [Matthew] argues that the Doren criteria are inapplicable to juveniles, therefore, if they are used it is error. Assuming, arguendo, that is a true statement, [Matthew] certainly cannot claim that the Doren criteria are the only means available to predict future dangerousness nor can he claim that Chapter 980 requires their use. Moreover, any argument that the Doren criteria are flawed when applied to juveniles goes to weight of the evidence and does not call into question the constitutionality of Chapter 980 (as [Matthew] certainly cannot prove that there is no means by which to predict the future dangerousness of a juvenile).

We agree with and, therefore, adopt the trial court's thoughtful analysis on this issue. Third, the trial court determined Matthew's future dangerousness by considering all of the evidence and not just the Doren criteria. For example, in its decision, the trial court indicated that it had considered: the DSM-IV; Matthew's extensive history of sexual and non-sexual misbehavior; the nature of the conduct disorder, which the court found predisposes Matthew to future dangerousness; and additional factors "from various research" that demonstrate recidivism, as applied to Matthew. In its decision, the trial court explicitly stated that it considered all these factors, including, but not limited to, the Doren criteria. We are satisfied that there was a sufficient basis in the record upon which the trial court could predict Matthew's future dangerousness. There-

fore, we reject Matthew's argument that there is no reasonable basis upon which to predict future dangerousness in juveniles, and we conclude that Chapter 980 is not unconstitutional as applied to Matthew.

E. . Matthew's constitutional challenge of the trial court's reliance on WIS JI—CRIMINAL 2502 fails.

. ¶ 36. Matthew contends that the trial court's reliance on WIS JI—CRIMINAL 2502 violates both his due process and his equal protection rights. First, Matthew argues that the trial court violated his due process rights by relying on WIS JI—CRIMINAL 2502, because the instruction fails to define "substantial probability" as it is used in § 980.02(2)(c), STATS. Matthew asserts that the failure to define "substantial probability" forces people of common intelligence to guess at its meaning and differ as to its applicability, rendering the statute void for vagueness. Second, Matthew maintains that Chapter 58 defines "substantially probable" to mean "extremely likely," and he concludes that those committed under Chapter 980 are entitled to the same rights as those committed under Chapter 58. Therefore, Matthew argues that the trial court violated his equal protection rights by relying on WIS JI—CRIMINAL 2502, because the instruction fails to define "substantial probability" to mean "extremely likely."

¶ 37. We note that both of these arguments have been addressed and soundly rejected in recent decisions by this court as well as the Wisconsin Supreme Court. *See, e.g., State v. Curiel,* 227 Wis. 2d 389, 597 N.W.2d 697 (1999) (rejecting identical challenges to the constitutionality of Chapter 980 under both the due process and equal protection clauses); *State v. Kienitz,*

221 Wis. 2d 275, 585 N.W.2d 609 (Ct. App. 1998) (rejecting the argument that "substantially probable" must be defined to mean "extremely likely"), *aff'd*, 227 Wis. 2d 423, 597 N.W.2d 712 (1999); *State v. Zanelli*, 212 Wis. 2d 358, 372–75, 569 N.W.2d 301, 307–08 (Ct. App. 1997) (holding that the failure to define "substantially probable" in Chapter 980 is comparable to the failure to define "reasonable doubt" in a criminal case, because the Constitution neither requires a definition nor forbids one). Thus, we reject Matthew's arguments, and his constitutional challenges necessarily fail. We are satisfied that the jury instructions fully and fairly informed the trial court of the applicable law and, therefore, we conclude that the trial court properly exercised its discretion in relying on WIS JI—CRIMINAL 2502. *See id.* (the decision regarding what jury instructions will be given is committed to the sound discretion of the trial court as long as the instructions fully and fairly inform the trier of fact of the applicable law).

### III. CONCLUSION.

¶ 38. In his postcommitment motion for ineffective assistance and on appeal, Matthew argues that counsel's failure to raise the preceding substantive issues constitutes ineffective assistance of counsel. However, after addressing the merits of each substantive issue raised by Matthew we are satisfied that Matthew is unable to demonstrate a reasonable probability that had his counsel raised the issues at trial, the result of the proceeding would have been different. Because none of the substantive issues had any merit, counsel's failure to raise them at trial did not deprive Matthew of a fair trial and a reliable outcome. We are satisfied that Matthew is unable to demonstrate prejudice and, therefore, we conclude that

Matthew's claim of ineffective assistance of counsel fails.

¶ 39. For these reasons, we conclude that the trial court properly denied Matthew's postcommitment motion for dismissal of the commitment order or, alternatively, a new trial based on the ineffective assistance of counsel. Therefore, we affirm.

*By the Court.*—Orders affirmed.